ROGERS, Circuit Judge,
dissenting:
Adhering to instruction from the Supreme Court, this court explained in Sierra Club v. EPA:
In many if not most cases the petitioner’s standing to seek review of administrative action is self-evident; no evidence outside the administrative record is necessary for the court to be sure of it. In particular, if the complainant is “an object of the action (or forgone action) at issue” — as is the case usually in review of a rulemaking and nearly always in review of an adjudication — there should be “little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.”
292 F.3d 895, 899-900 (D.C.Cir.2002) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In this case, a review of the administrative record shows that standing is self-evident.
The petitioners and the intervenors (hereafter, “petitioners”) are trade associations that represent the manufacturers, shippers, and transporters of hazardous materials.[1] The final rule of the Department of Transportation (“Department”) subjects the associations’ members to federal regulation when handling hazardous materials during shipment and transport. See Applicability of the Hazardous Materials Regulations to Loading, Unloading, and Storage, 70 Fed.Reg. 20,018 (Apr. 15, 2005); Applicability of the Hazardous Materials Regulations to Loading, Unloading, and Storage, 68 Fed.Reg. 61,906 (Oct. 30, 2003) (collectively, the “final rule”). However, the final rule leaves unregulated the unloading of hazardous materials, creating a void to be filled by state and local authorities. During rulemaking, the regulated industry set forth its concerns that gaps in the final rule increased the risk of injury both to the public and to members’ employees who handle hazardous materials. As materials submitted by the federal review board charged with investigating “hazmat” accidents confirm, these concerns are clearly non-conjectural. Under the circumstances, an association whose *823 members are subject to the challenged rule has self-evidently met its burden to demonstrate that it has standing to seek vacation of the final rule. See Defenders of Wildlife, 504 U.S. at 560-61, 112 S.Ct. 2130; Motor & Equipment Mfrs. Ass’n v. Nichols, 142 F.3d 449 (D.C.Cir.1998). Here, petitioners maintain that (1) the rule fails to conform with congressional intent, and (2) the Secretary, in promulgating the final rule, failed to address comments raising material concerns. See Op. at 814.
Petitioners state in their opening brief that they represent “members [that] transport, offer for transportation or cause to be offered for transportation hazardous materials.... The record of this rulemaking proceeding demonstrates that each association has numerous members that are subject to the rules at issue, and would have individual standing to file for review of the final rule.” Petitioners’ Br. at 2; see id. at ii (enumerating petitioners); Intervenors’ Br. at 5-7 (asserting standing as to intervening electric and gas utility trade associations who “use, generate, transport and dispose of hazardous materials”). A sampling of the record references cited by petitioners suffices to support this statement and thus to show that it is self-evident that at least one member of the petitioner-associations has standing to challenge the final rule. See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 553, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996); Hunt v. Wash. State Apple Adver. Comm’n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). In supplemental briefs on standing, petitioners submitted additional citations to the administrative record in support of two theories, based on (1) the burdens and dangers resulting from a hodge-podge of state and local requirements and (2) the increased liability risks associated with gaps in federal oversight. See Op. at 816, 818. Together, the record citations establish that the associations of shippers and carriers properly stand before this court as parties who have been aggrieved by a rule for which they are “an object of the ... forgone action[ ] at issue.” Defenders of Wildlife, 504 U.S. at 561, 112 S.Ct. 2130.
Although it cannot be gainsaid that the court must assure itself that the parties have standing, the administrative record here cannot fairly be read to leave the court unconvinced, as petitioners have fully met their burden as to the well-rehearsed requirements of injury-in-fact, causation, and redressability. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11-12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004); Hazardous Waste Treatment Council v. EPA, 861 F.2d 270, 277 (D.C.Cir.1988). The record plainly supports the theories advanced by petitioners, namely that the Secretary, by failing to set a national standard for unloading, has left petitioners’ members’ employees and the public more susceptible to accidental injury. Representatives of the regulated industry and the National Transportation Safety Board (“NTSB”) have attested to the burdens of compliance and the security and safety gap that accompanies the unreliable hodgepodge of state, county, and local requirements for unloading in the absence of a federal standard.
For example, petitioner American Chemistry Council (“ACC”), stating that it “represents the leading companies engaged in the business of chemistry ... and is America’s # 1 exporter — with more than $80 billion in exports in 2000” and that its members represent “more than 90% of the productive capacity of basic industrial chemicals in the United States and a large portion of the regulated hazardous materials shipping community,” Joint Appendix (“J.A.”) at 314, commented that regulatory gaps would result in compromised safety because the Department has considerable *824 expertise as to loading and unloading that states and localities have not demonstrated; yet, the ACC noted, no effort has been made by the Department to assess the safety consequences of the lack of federal regulation. Id. at 319-20. Petitioner National Association of Chemical Distributors (“NACD”), stating that it “is the leading association of chemical distribution companies in the United States,” noted a “serious risk of safety and compliance gaps,” expressing concern about an “incomprehensible patchwork of requirements [by state and local governments that will] diminish safety and slow ... shipments.” Id. at 236-37 (emphasis added). The NACD warned: “The result will be over-handling of hazardous materials and more opportunities of accidents, incidents, and injuries.” Id. at 237 (emphasis added). Petitioner Utility Solid Waste Activities Group (“US-WAG”), stating that its members represent 85% of the total electric generating capacity in the United States and service more than 95% of the nation’s consumers of electricity and 93% of consumers of natural gas, id. at 325, commented on the high costs of additional training needed in order to comply with state and local requirements for unloading, id. at 327-28. USWAG commented further that, in the absence of federal regulation, transportation risk cannot fully be controlled by relying on fixed-facility unloaders (who may lack complete knowledge of each transport vehicle) or drivers (who may lack complete knowledge of local requirements). Id. at 331. Detroit Edison, a shipper and carrier and member of USWAG, expressed concern about both the operational impact of the absence of a federal standard on unloading and the costs associated with training employees to comply with state and local regulations as well as the impact of such costs and the consequential costs of potential liability on its competitive position. Id. at 310-12.
Consequently, the court’s standing analysis is flawed in two respects. First, the court has no warrant to ignore the administrative record when assessing standing. Second, the court incorrectly insists upon proof of actual past injury, see Op. at lb-20, when none is required to establish imminent and non-conjectural injury-in-fact.
The instructions of this court in Sierra Club and of the Supreme Court in Defenders of Wildlife obligate this court to consider the administrative record when evaluating the standing of a regulated party. How can standing ever be “self-evident” from the administrative record unless the court examines that record? Instead the court disregards the evidence from the administrative record cited in petitioners’ briefs. The court reasons that the affidavit attached to the supplemental brief fails to demonstrate that a federal unloading standard would preempt the local requirement, Op. at 818, and that there is no evidence that one of petitioners’ members has, in fact, suffered an actual injury caused by the rule, Op. at 818-21. The evidence of injury can be found in the administrative record. See Petitioners’ Supp. Br. at 8 (citing J.A. at 319-20, addressing the regulatory gap, and J.A. at 212-19, 222-23, regarding the NTSB’s concerns); Intervenors’ Br. at 7 (referencing, inter alia, statements by USWAG and American Chemistry Council cited supra). To the extent that the court’s opinion implies a reluctance to credit record materials that are not also cited in the party briefs, this is inconsistent not only with the premise that standing can be “self-evident” from the administrative record, it is also inconsistent with our precedent, as in American Library Ass’n v. FCC, 401 F.3d 489, 491 (D.C.Cir.2005), where the court found inadequate support for standing only after reviewing the administrative record.
*825 Moreover, the contents of the administrative record establish injury-in-fact that is imminent and non-conjectural and satisfies the requirements of causation and redressability. “Actual” injury is not necessary to demonstrate injury-in-fact. See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 183, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (finding the desire to canoe nearby a polluted wastewater discharge “adequately documented injury in fact” without the need to be injured by the pollution); Defenders of Wildlife, 504 U.S. at 573 n. 7, 112 S.Ct. 2130 (“[Ujnder our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency’s failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.”); Ass’n of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (finding “competitor standing” where a Comptroller’s ruling “might entail some future loss of profits” for petitioners). Although the court professes not to be requiring evidence of actual injury, see Op. at 820-21, its analysis suggests otherwise, as the court is unbothered by the logical inevitability of injury to petitioners’ members. Indeed, as this court held in Hazardous Waste, “a national trade organization of firms engaged in the treatment of hazardous waste and the manufacture of equipment for that purpose ... has standing insofar as it represents members on whom regulatory laxity may inflict environmental injury.” 861 F.2d at 280 (emphasis added). This is precisely the concern expressed by industry in the administrative record here.
The non-conjectural nature of the industry’s safety concerns is borne out by the comments from the NTSB in the administrative record. The NTSB is charged with investigating accidents involving the handling of hazardous materials, 49 U.S.C. § 1111(g); 49 C.F.R. § 831.2(c); see, e.g., Louisville & Nashville R.R. Co. v. Sullivan, 617 F.2d 793, 797 (D.C.Cir.1980), and “evaluating] the adequacy of safeguards and procedures for the transportation of hazardous material.” 49 U.S.C. § 1116. Following investigations of “hazmat” accidents in 1998 and 1999, the NTSB urged the Secretary to complete rulemaking as to “safety requirements for loading and unloading hazardous materials.” J.A. at 211-12. The NTSB subsequently reiterated this request, twice in 2001, because its review of accidents led it to consider national standards “an essential part” of effective regulation. Id. at 212. The NTSB employs reasoning similar to that of petitioners, thereby underscoring the gravity of their claims.
In light of Hazardous Waste, and the other precedent cited, the record comments regarding the likelihood of harm to members’ employees suffice to show injury-in-fact. See generally Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472-76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The court relies upon Defenders of Wildlife to heighten the evidentiary burden but fails to recognize that, in Defenders of Wildlife, the plaintiffs injury arose from the allegedly unlawful regulation (or lack thereof) of a third party, leading to enhanced requirements of causation and redressability. 504 U.S. at 562, 112 S.Ct. 2130; see Op. at 814-15, 817, 818, 818-19, 819-20, 820-21, 821 (citing Defenders of Wildlife). The nexus between the final rule and the risks of injury identified by the regulated industry and by the NTSB are not in doubt; granting the petitions would afford petitioners a meaningful remedy. Additional *826 ly, the court’s attempt to limit its holding by stating it does not presume that petitioners would be unable to show their standing to challenge the rule, Op. at 820, fails. Contrary to precedent, its analysis of why petitioners have failed to show injury-in-fact disregards the administrative record and establishes a heightened evi-dentiary threshold.
Understandably, in view of the precedent, the government has not suggested that petitioners lack standing, although invited to do so during oral argument when the court, sua sponte, first raised the issue. According to the court today, however, it is not sufficient that petitioners represent the bulk of the regulated industry that will be directly affected by 'the final rule. Nor is it sufficient that petitioners have provided citations to the administrative record that establish the non-conjectural nature of industry concerns with the final rule as it affects the risks to public and employee safety. Nor is it sufficient that petitioners’ briefs identified safety concerns, see Petitioners’ Br. at 10, 19-22; Joint Reply Br. at 7-8; Petitioners’ Supp. Br. at 7-9; Intervenors’ Br. at 6-7, in support of their standing that are consonant with our precedent. Instead, the court blinds itself to what is plainly before it: the administrative record to which, as precedent instructs, the court properly turns to assure itself of the parties’ standing. Defenders of Wildlife, 504 U.S. at 561-62, 112 S.Ct. 2130; Sierra Club, 292 F.3d at 899-900.
Accordingly, because the administrative record demonstrates that petitioners have standing to challenge the final rule, I respectfully dissent.

. The petitioners are the American Chemistry Council; the American Petroleum Institute; American Trucking Associations, Inc.; Chlorine Institute, Inc.; the Compressed Gas Association; the National Association of Chemical Distributors; the National Industrial Transportation League; the National Paint and Coating Association; National Tank Truck Carriers, Inc.; and the Synthetic Organic Chemical Manufacturers Association. The petitioners’ brief states that "[e]ach is a continuing association of numerous individual companies, and each is operated for the purpose of promoting the general commercial, professional, legislative, or other interests of their respective memberships.” Petitioners' Br. at ii. The intervenors are the Edison Electric Institute, which represents investor-owned electric utility companies; the American Gas Association, which represents natural gas utilities; the National Rural Electric Cooperative Association; the American Public Power Association; and the Utility Solid Waste Activities Group, which represents "approximately 80 individual electrical utilities.” Intervenors' Br. at ii-iii.